[S. F. No. 9569. In Bank.—September 12, 1923.]

AMERICAN TRADES AND SAVINGS BANK (a Corporation), Appellant, v. FREDERICK T. DUHRING et al., as Executor, etc., Respondents.

[S. F. No. 9570. In Bank.—September 12, 1923.]

FIRST NATIONAL BANK OF RACINE, WISCONSIN, (a Corporation), Appellant, v. FREDERICK T. DUHRING et al., as Executor, etc., Respondents.

[1] PROMISSORY NOTES—CONSIDERATION—EVIDENCE.—In this action to recover upon certain promissory notes, it is held that there was sufficient evidence to show that there was a consideration for the execution and delivery of the notes in question, and that the trial court erred in finding to the contrary; also that it erred in finding that the notes were not given by the makers thereof in the ordinary course of business and were not intended to be paid by them when due.

[2] ID. — CONSIDERATION FOR TRANSFER. — If promissory notes were originally supported by a sufficient consideration, no further consideration is needed to support a transfer of them to a bank for collection.

APPEALS from judgments of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Reversed.

The facts are stated in the opinion of the court.

J. H. Morris, Cushing & Cushing and Delger Trowbridge for Appellants.

Thomas C. Denny, Preston & Duncan and Robbins, Elkins & Van Fleet for Respondents.

LENNON, J.—These two cases were tried together and, while separately appealed, were by stipulation submitted upon one transcript and upon identical briefs. Each of said actions was for recovery by the respective plaintiffs upon promissory notes executed by Caius T. Ryland and John Scott Wilson to Inter-State Motors Company, a corporation, and by it indorsed and transferred to the First Na-

tional Bank of San Francisco, which later indorsed and transferred one of said notes to the First National Bank of Racine, Wisconsin, one of the plaintiffs herein, and the other to the Commercial and Savings Bank of Racine, Wisconsin, the predecessor of the American Trades and Savings Bank, the other of said plaintiffs herein. The complaint in each action is in the usual form of an action for the recovery upon an indorsed promissory note. The answers of the defendants in each action are identical in form. They each admit the execution of said notes, but set up at considerable length and with much detail three separate and specific defenses to a recovery upon either of them. In the first of these defenses the defendants allege the circumstances under which each of said notes was given, and which will be more particularly hereinafter set forth. In the second of said defenses the defendants in each case allege that each of said notes was executed by the makers thereof without consideration and not in the ordinary course of business and that each of said notes was indorsed by the payee thereof to the First National Bank of San Francisco without any consideration passing to it therefor. And the defendants on information and belief aver that the plaintiffs in each of said actions received the note transferred to it without consideration and well knowing that no consideration had passed either to the makers or to the indorsers thereof. In the third of said defenses the defendants in each case aver that said notes were not executed in the ordinary course of business, but were executed by the makers for the sole and exclusive purpose of having the same placed with the First National Bank of San Francisco for collection under a special arrangement as to the application of payments, and that at the time each of said notes was executed and was accepted by the said First National Bank of San Francisco it was agreed that the notes should be held by the said First National Bank of San Francisco for collection and for no other purpose whatsoever and which the plaintiffs in each of said actions well knew at the time said notes were transferred to it. Subsequently to the framing of the issues in each of said actions the defendants Caius T. Ryland and John Scott Wilson died, and the present defendants were duly appointed to administer, respectively, upon each of their estates. Whereupon the plaintiff in each case filed a supplemental complaint alleging the decease of said original defendants and

the appointment of their successors and the proper presenta-
tion of a claim in each case against their respective estates.

The cases came on for trial before the court sitting without
a jury and were tried and submitted for decision together
and the trial court thereafter filed its findings of fact and
its conclusions of law in each case. In its said findings of
fact the trial court found that the original defendants,
Ryland and Wilson, had executed and delivered the note in
question in each case to the Inter-State Motors Company,
their codefendant, on the twenty-first day of June, 1913.
The court further found that the said C. T. Ryland and
John Scott Wilson were not indebted to defendant Inter-
State Motors Co. at the time they executed said note; they
gave said note for the use of the defendant corporation; it
was never contemplated by the parties they should pay the
note; they gave the note for the purpose of lending their
credit to the corporation; they were accommodation makers
of said note; the note was to be paid from the proceeds of
the sales of certain motor-trucks, and not otherwise; that the
said motor-trucks have not been sold, except that one of said
trucks was sold for $1,350, and the said $1,350 were paid
upon said note, and the note was not given in the ordinary
course of business as a payment from the said C. T. Ryland
and John Scott Wilson to defendant Inter-State Motors Co.;
the said note was not executed for a consideration, and is
wholly without consideration, and all of the facts found in
this paragraph were known to the First National Bank of
San Francisco at the time the said note was delivered to it.
The court made further findings of fact which will be ad-
verted to later. As a conclusion of law from its said find-
ings of fact the trial court found that the plaintiffs were
entitled to judgment against the defendant Inter-State
Motors Co., but that the defendants other than the Inter-
State Motors Co. were entitled to judgment in their favor
and for their costs. Judgment was entered accordingly in
each case and from such judgment the plaintiffs have re-
spectively taken and prosecuted these appeals.

[1] The first contention of the appellants is that there
was no evidence sufficient to justify the finding of the trial
court that there was no consideration for the notes sued
upon. The determination of this question involves an ex-
amination of the evidence in the case. The evidence touch-
ing the execution of the notes in question and their delivery

to the Inter-State Motors Co., the original payee thereof, is practically all documentary and free from conflict. It may be summarized as follows: In the latter part of the year 1912 the Piggins Motor Truck Co. was a corporation having its principal place of business in Racine, Wisconsin, and being engaged in the manufacture and sale of a certain type of motor-trucks designated in the record herein as "Piggins trucks." The Inter-State Motors Co. was at this time a California corporation engaged in the business of dealing in motor-trucks. On the fifth day of October, 1912, a contract in writing was entered into between these two corporations by the terms of which the Piggins Motor Truck Co. granted to the Inter-State Motors Co. the right to sell said motor-trucks in certain territory embracing all of the Pacific coast states, the Philippine Islands, the Hawaiian Islands, Alaska, Australia, New Zealand, China, and Japan, and in pursuance of said grant the former agreed to sell to the latter 200 Piggins trucks during the life of the contract, which was to last for a little more than one year, at certain designated prices for the several sizes of said trucks. These trucks were to be consigned by the seller to the dealer from time to time as ordered, accompanied with sight drafts attached to the bills of lading, which were to be paid on presentation.

The first order given by the Inter-State Motors Co. under said contract was for twenty-four one-ton trucks, three two-ton trucks and three three-ton trucks, and was of the date of October 26, 1912. Shipment of these trucks began shortly after the date of said order and proceeded during the winter and spring of the following year. The method of business of the Piggins Motor Truck Co. with relation to its drafts upon the California corporation was that of taking said drafts with attached bills of lading to one or the other of the Racine banks with which it did business, which would cash the draft and send it to its San Francisco correspondent for collection. In the event any of said drafts was unpaid the drawer was to reimburse the bank which had cashed it in the first instance. One of said banks was the First National Bank of Racine, Wisconsin, one of the plaintiffs herein, the other was the Commercial and Savings Bank of Racine, Wisconsin, the predecessor of the other plaintiff herein. The sight drafts for the earlier shipments were paid and certain of said trucks were received by the dealer upon such payment and the release of the bill of lading.

Beginning in March, 1913, the Inter-State Motors Co. became
tardy in taking up the sight drafts which had been for-
warded with truck shipments and the Piggins Motor Truck
Co. began to be insistent in letters and telegrams upon the
payment of said drafts. These delays arose out of the fact
that the Inter-State Motors Co. was in financial straits due
to certain internal conditions which are best explained by
the terms of a written agreement entered into between C. T.
Ryland, as the party of the first part; Samuel M. Wilson,
as the party of the second part; John Scott Wilson, as the
party of the third part, and the Inter-State Motors Co., as
the party of the fourth part. The individual parties to said
agreement were stockholders in said corporation. The agree-
ment was dated the twentieth day of June, 1913, and it was
recited therein that whereas, the said C. T. Ryland had, on
June 16, 1913, sold to the said Samuel M. Wilson 3,751
shares of the capital stock of the said corporation, and
whereas, the said Samuel M. Wilson and John Scott Wilson
had paid for said stock with their joint and several promis-
sory notes in the sum of $26,000, and whereas, subsequent to
this transaction certain questions had arisen as to the obli-
gations of the Inter-State Motors Co. to the Piggins Motor
Truck Co. by reason of the existence of three certain unpaid
sight drafts with bills of lading attached covering nine Pig-
gins trucks theretofore shipped by the Piggins Motor Truck
Co. to the Inter-State Motors Co., which drafts were then
overdue, now, therefore, it was agreed between the four par-
ties to said written agreement that the party of the first
part, Ryland, was to surrender the note of the parties of the
second and third part, Samuel M. Wilson and John Scott
Wilson, and was to take in lieu thereof a new note of said
last-named parties for the same sum, but payable in four
annual installments; and in consideration and upon the
execution thereof the party of the first part, Ryland, was
to pay the sum of $5,000 in cash for the purpose of releas-
ing three of said Piggins motor-trucks covered by the first of
said drafts amounting to $3,937.50, the balance of said cash
payment to be applied upon the second of said drafts for the
sum of $5,652.50; and the said first party, Ryland, was also
to make and execute with the said party of the third part,
John Scott Wilson, as comaker, two joint and several promis-
sory notes, one for $4,600, representing the balance remaining
on said second draft, and one for $4,952.50, representing the

amount due upon the third of said drafts, the said notes to be made payable to the Inter-State Motors Co., the fourth party to said agreement, and to be indorsed by it and placed as additional security with the banks holding the bills of lading for said motor-trucks, to the end that the nine Piggins motor-trucks at present in the warehouse and for which the said sight drafts were the purchase price might be withdrawn from storage and sold under the following arrangement, namely: the first three of said motor-trucks to be withdrawn upon the cash payment of $5,000 made by the party of the first part, Ryland, should become and be the property of said party of the first part, but should be turned over by him to the party of the fourth part, the Inter-State Motors Co., for sale on terms satisfactory to the said party of the first part, the net proceeds arising out of such sale to be delivered to the party of the first part and to be applied by him to the payment of the first said promissory note, and any excess thereof to be applied on the second of said promissory notes, to the end that another three of said Piggins trucks might be paid for, released, and sold upon the same arrangement and with a like application of the net proceeds thereof to the payment in full of the second of said promissory notes and thereafter to the reimbursement of the said first party, Ryland, for his advancement of the cash sum of $5,000 above referred to with interest, any balance remaining after these successive releases and sales of said Piggins motor-trucks and the application of the sums received therefor as above specified to be paid over to the Inter-State Motors Co., the fourth party to said agreement. There is much more to this agreement which must be taken to have been and which in fact was expressly stated therein to have been an adjustment of the business dealings and differences of the individuals who were the first three parties thereto and also an intended relief of the financial embarrassment under which the Inter-State Motors Co., of which said three individuals were stockholders, was laboring through its inability to pay the drafts being drawn upon it by the Piggins Motor Truck Co., and thus release the motor-trucks consigned to it for sale in the due course of its business as a dealer in such trucks pursuant to its agency for the Piggins Motor Truck Co.

The first question which arises upon this appeal and upon the face of the transactions between the parties to the fore-

going agreement as thus far set forth is as to whether or not there was any consideration for the execution and delivery of the two promissory notes above mentioned to the Inter-State Motors Co. as the payee thereof. It would seem that there can be but one answer to that question, and that an affirmative answer. The three individuals who were parties to the agreement last above set forth had previously thereto been engaged in dealings between themselves in the stock of the Inter-State Motors Co., as a result of which they were all stockholders in said corporation at the date of said agreement and hence deeply interested in its success as a going concern and were also financially interested in their own individual welfare arising out of their inter-dealings in the stock of the corporation and to be subserved by its success in the handling and sale of the particular trucks for which it held the agency under its agreement with the Piggins Motor Truck Co., and which were depending for their delivery upon its ability to pay their purchase price. That these mutual and interdependent advantages to all of the parties to said agreement would constitute legal and ample consideration for the execution and delivery of the notes in question to the immediate payee thereof, we think, there can be no doubt. It is true, as found by the trial court, that the said C. T. Ryland and John Scott Wilson were not indebted to the Inter-State Motors Co. at the time they executed and delivered to it said notes; but they were stockholders in said corporation and as such were deeply and directly interested not only in the successful conduct of the business affairs and dealings of said corporation, but also in the fulfillment of its obligations, since whatever default occurred therein must ultimately fall as a liability upon them as its stockholders. These advantages upon the one hand and the avoidance of these liabilities upon the other form a sufficient consideration for the original execution and delivery of these notes even in the absence of an existing indebtedness on the part of the makers thereof to the payee thereof, particularly in view of the fact that it was the express understanding and agreement of the parties that the payee of said notes was to indorse and transfer the same to the bank which held and was insisting upon the payment of the sight drafts drawn upon said payee for the purchase price of said motor-trucks. The trial court was, therefore, in error in its findings that these notes were without consideration for their original

execution and delivery. It was also in error in finding upon the evidence as above set forth that it was never contemplated by the parties to these notes that they should pay the same. The undisputed evidence shows that these notes were so drawn as to be payable to order, one at thirty and the other at sixty days after date, and further shows that they were to be indorsed and delivered by their immediate payee to the holder of the sight drafts corresponding to the amounts for which said notes were drawn, and which sight drafts were then due and payable, and that they were intended to secure and provide for the payment thereof, and for that purpose were to be collected when due. The testimony of Mr. Frank H. Powers, the then attorney for the Inter-State Motors, Co., and a witness offered on behalf of the defendants, testifying as to what transpired when he delivered the notes in question to the First National Bank of San Francisco, showed that the notes were so delivered for collection and that the proceeds of the notes were to be used as a revolving fund to redeem the trucks through the payment of the sight drafts which represented their purchase price. This testimony is in entire harmony with the agreement of the parties that said notes were to be so collected and the proceeds so applied, and hence of necessity that said notes were to be paid when due. It is true that the parties to the agreement through which these notes came into being hoped and probably believed that the Inter-State Motors Co. would be so far successful in making sales of the released motor-trucks as to take care of said notes when or even before they fell due, but that hope or belief cannot be held to affect the liability of the makers of these notes to pay the same according to their terms in the hands of the indorsee.

The trial court was, therefore, in error in its finding that these notes were not given by the makers thereof in the ordinary course of business and were not intended to be paid by them when due. **[2]** As to the finding of the trial court that the notes in question were delivered to the First National Bank of San Francisco without consideration, such finding is not only contrary to the evidence in the case, but is also a finding upon an immaterial issue, since if the notes were originally supported by a sufficient consideration and were transferred by agreement to the First National Bank of San Francisco for collection, no further consideration is

needed to support the transfer; and the same conclusion must be reached as to the finding of the trial court to the effect that the makers of said promissory notes were not indebted to the First National Bank of San Francisco at or prior to the time of said transfer to it of said notes. The Inter-State Motors Co. was indebted to the Racine banks, whose agent the First National Bank of San Francisco was in the holding of the then overdue sight drafts drawn by them upon the said Inter-State Motors Co. which had been transmitted by them to it for collection. These notes had been executed and delivered to the Inter-State Motors Co. as their payee for the express purpose of securing, and hence, when due and collected, of paying said sight drafts. A like conclusion must be reached as to the further finding of the trial court that there was no consideration for the transfer of said notes by the First National Bank of San Francisco to the plaintiffs herein, since the former was merely the agent of the latter in the entire transaction, and in the transfer of said notes to the plaintiffs was only fulfilling its duty to its principals, who were at all times the real parties in interest and in said sight drafts and in whatever of value had been received by their said agent for the purpose of securing or paying the same.

There is no merit in the respondents' contention that since the First National Bank of San Francisco took and held the defendants' said notes merely for collection it had no authority to indorse them over to the plaintiffs herein. Nor do the authorities which they cite in support of said contention have any applicability to the facts of the case at bar, for the twofold reason that said notes were not taken by the First National Bank of San Francisco merely for collection but were taken and held by it for the purpose of applying their proceeds when collected to the payment of the sight drafts of its principals, the Racine banks, to which it was bound to return said drafts or the proceeds, if any, collected thereon with whatever security it had received to secure the payment of the uncollected portion due thereon.

It would seem from the foregoing reasoning based upon the admitted facts as thus far stated that the only defense available to these defendants was the defense that the original consideration for the purchase and sale of the motor-trucks had failed through some breach of the contract or

warranties upon which said motor-trucks had been sold and sent to the Inter-State Motors Co. by the Piggins Motor Truck Co., the ultimate party in interest in the collection of the sums due upon said sight drafts. The respondents herein among their other defenses pleaded specifically the breach of such contract and warranties and consequent failure of the consideration for said drafts and hence for the giving of said notes. The trial court, however, made no specific finding as to the facts pleaded by way of such defense, its only finding in that regard being the finding which is rather in the plaintiffs' favor to the effect that the Inter-State Motors Co. was indebted to the plaintiffs herein at the time said notes were delivered to them. If this finding is to be taken against the defendants upon this particular issue, it furnishes a further reason why the trial court was in error in its conclusions of law herein and in the judgment based thereon.

The judgment in each case is reversed.

Waste, J., Myers, J., Lawlor, J., Kerrigan, J., and Wilbur, C. J., concurred.

Rehearing denied.

All the Justices concurred.